**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MARK A. LAPIERRE,

                          Plaintiff,

                                                    9:15-CV-1499
          v.                                        (MAD/DJS)

CHAD LAVALLEY, *et al.*,

                          Defendants.

**APPEARANCES:**                    **OF COUNSEL:**

MARK A. LAPIERRE
Plaintiff, *Pro Se*
15-A-1283
Washington Correctional Facility
72 Lock Eleven Lane
P.O. Box 180
Comstock, New York 12821-0180

HON. LETITIA JAMES                  CHRIS LIBERATI-CONANT, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

### I. INTRODUCTION

On December 18, 2015, *pro se* Plaintiff Mark A. LaPierre commenced this action

pursuant to 42 U.S.C. § 1983, asserting claims arising from his confinement at both

Clinton Correctional Facility ("Clinton") and Marcy Correctional Facility ("Marcy").

- 1 -

Dkt. No. 1, Compl. Following initial review of the Complaint and after receiving leave from the Court, Plaintiff filed his Amended Complaint on November 30, 2017, removing previously dismissed Defendants and adding Officer Randy Russell as a named Defendant. Dkt. No. 68, Am. Compl. Plaintiff's Amended Complaint contains five causes of action arising from an incident that allegedly occurred on December 21, 2012, and medical treatment for injuries associated with that same incident, while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Am. Compl. at pp. 9-10.

Presently before this Court is Defendants' Motion for Summary Judgment. Defendants contend that Plaintiff failed to exhaust his administrative remedies as to his claims regarding Defendants Guynup, LaValley, Delisle, and Russell, and that Plaintiff's Eighth Amendment claim against Defendant Vadlamudi fails as a matter of law. Dkt. No. 79, Defs.' Mot. Summ. J. Plaintiff opposes Defendants' Motion for Summary Judgment, Defendants have replied, and Plaintiff has provided supplemental responses. Dkt. No. 90, Pl.'s Opp.; Dkt. No. 91, Defs.' Reply; Dkt. Nos. 92 & 93, Pl.'s Supp. Resp. The Court finds that Plaintiff: (1) failed to exhaust his administrative remedies; and (2) failed to show there is a material question of fact as to whether Dr. Vadlamudi was deliberately indifferent to his serious medical needs and therefore recommends that the Motion be **granted**.

## II. BACKGROUND

Plaintiff alleges that while housed at Clinton on December 21, 2012, he was the victim of an assault by DOCCS staff and was subsequently denied medical treatment for injuries associated with that assault. Am. Compl. at pp. 11-12. These allegations are made as to Defendants Delisle, LaValley, Guynup and Russell, who have denied the allegations made by Plaintiff. *Id.*; *see also* Dkt. Nos. 72 & 76. The particular facts underlying these allegations are not relevant to the Motion and, therefore, are not discussed in detail. There is no record of a grievance being filed with respect to this incident. *See* Dkt. Nos. 79-6, Pickett Decl.; 79-7, Pfendler Decl.; 79-10, Gregory Decl.

Plaintiff was subsequently transferred to Downstate Correctional Facility from Clinton on December 28, 2012 and was seen in the infirmary, given an x-ray that revealed that Plaintiff's ninth rib was fractured, and he was prescribed pain medication. Dkt. No. 79-13, Vadlamudi Decl. at ¶¶ 3-4. Plaintiff was transferred to Marcy and was subsequently examined by Dr. Vadlamudi who prescribed Plaintiff Tylenol or Ibuprofen to treat his pain and issued Plaintiff a permit limiting him to a bottom bunk. Vadlamudi Decl. at ¶¶ 4-6. Plaintiff was then transferred again and did not return to Marcy until March 2013. *Id.* at ¶ 7.

Plaintiff again presented to Dr. Vadlamudi complaining of back and shoulder pain on March 21, 2013. Vadlamudi Decl. at ¶ 8. Plaintiff disputes that Dr. Vadlamudi properly examined or treated him at that time. Pl.'s Opp. at ¶ 20. Plaintiff requested an MRI, but Dr. Vadlamudi determined that an MRI was not medically indicated at that time and prescribed Tylenol or Ibuprofen and ice to Plaintiff. *Id.* at ¶¶ 8 & 10.

On March 28, 2013, Plaintiff filed a grievance complaining of the treatment he received from Dr. Vadlamudi during his January 22nd visit and March 21st visit. Pfendler Decl. at ¶ 7 & Ex. B. The Inmate Grievance Review Committee ("IGRC") at Marcy did not reach a determination as to the merits of Plaintiff's grievance, and the grievance was appealed to and later denied by the Superintendent after which Plaintiff again appealed to the Central Office Review Committee ("CORC"). Pfendler Decl., Ex. B. at pp. 1 & 13. On September 18, 2013, the CORC upheld the Superintendent's determination as to Plaintiff's grievance relating to Dr. Vadlamudi's treatment at Marcy. *Id.* at p. 1.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522,

525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read his supporting papers liberally, and [ ] interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord, Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants seek summary judgment as to all claims, other than those against Dr.

Vadlamudi, on the ground that Plaintiff failed to exhaust his available administrative remedies by filing a grievance regarding the claims surrounding the December 2012 assault. Dkt. No. 79-1, Defs.' Mem. of Law at pp. 4-8.

## A. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative

remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[1]

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

---

[1] Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Defendants properly raised the affirmative defense in their Answers to the Amended Complaint. Dkt. No. 72 at ¶ 17; Dkt. No. 76 at ¶ 17.

**B. Plaintiff's Failure to Exhaust Administrative Remedies**

The record before the Court establishes that DOCCS has no record of any grievance being filed by Plaintiff regarding the December 2012 incident that allegedly occurred at Clinton Correctional Facility. *See generally* Pickett Decl.; Pfendler Decl.; & Gregory Decl. Plaintiff contends that he did file a handwritten grievance while housed at Downstate Correctional Facility. Dkt. No. 90, Pl.'s Affirm. at ¶ 27. Plaintiff also generally argues that the DOCCS grievance process was not available to him within the meaning of *Ross* and that any failure to fully exhaust should be excused. Dkt. No. 90-2, Pl.'s Mem. of Law at pp. 9-15. Plaintiff's arguments lack merit and the Court recommends that the Motion for Summary Judgment be granted based on Plaintiff's failure to exhaust.

*1. Whether Plaintiff Actually Filed a Grievance*

Initially, Plaintiff's conclusory allegation that he filed a grievance that "disappeared," Pl.'s Mem. of Law at p. 12, is insufficient to raise a question of fact regarding exhaustion. "Courts have consistently held [ ] that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." *Rosado v. Fessetto*, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010); *see also Rodriguez v. Cross*, 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations."); *Artis v. Dishaw*, 2016 WL 11266599, n.13 (N.D.N.Y. Sept. 12, 2016) (finding that plaintiff's failure to exhaust was not excusable,

- 8 -

in part because, while the plaintiff "state[d] that some grievances were destroyed, but he has not submitted any copies of these grievances, nor does he specify when he attempted to file them."). Significantly, during Plaintiff's deposition when asked about whether he "ever attempt[ed] to submit a written complaint about the [] December 21 incident," Plaintiff made no mention of the handwritten grievance, stating :

> December 29th or December 30th. I wrote the D.O.C. I wrote the Inspector. I asked for a grievance. They would not give me one. Up in the infirmary where I was locked up, they said they didn't have any. I had been interviewed by – by the D.O.C.C.S. O.S.I. agent, M. Smith on January 11th. I explained everything to him. He took extensive notes, which are – all seem to be missing. I tried to file a grievance when I got back to G Unit and in our unit – in G Unit, I was only there a very short time, but they didn't have any grievances. So, I put in a request for Law Library. I never got to go.

Dkt. No. 91-2, Pl.'s Dep. at p. 79. Indeed, rather than stating that he filed a grievance, Plaintiff's testimony recounts only his inability to do.

In addition, Plaintiff makes no allegation that he ever received a response to his handwritten grievance or that he acted to follow-up on that grievance when he did not receive a response. Under DOCCS regulations, a grievance not decided within applicable time limits may be the subject of an appeal. 7 N.Y.C.R.R. § 701.6(g)(2). The clear weight of authority in the Northern District is that the failure of the IGRC to timely respond to a grievance, even in a case such as this where apparently no grievance number was issued for the grievance, requires the inmate to appeal the lack of action to the facility

Superintendent.  *Wallace v. Fisher*, 2015 WL 9275001, at \*2 & n. 6 (N.D.N.Y. Dec. 18, 2015) (citing cases).[1]  Plaintiff makes no allegation that he did so in this case.

Under these circumstances, the record before the Court establishes that Plaintiff did not file a grievance[2] regarding the alleged assault at Clinton.  He, therefore, did not exhaust his administrative remedies.

### 2. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate.  *Ross v. Blake*, 136 S. Ct. at 1858.  As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  *Id.*   The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1859-60.

---

[1] Footnotes seven and eight in the *Wallace* decision recite a similar weight of authority in the courts of the Southern and Western Districts of New York.
[2] Finally, Plaintiff asserts that he did in fact exhaust his administrative remedies because "[t]he Marcy Grievance incorporates the assault & battery into the grievance and appeals."  Dkt. No. 90-3 at ¶ 35.  To the extent that Plaintiff claims that the grievance he successfully filed with regard to his appointments with Dr. Vadlamudi in January and March of 2013, the grievance itself is entitled "[r]equest for stronger pain meds" and in no way details anything relating to the alleged assault on December 21, 2012.  Dkt. No. 79-9 at p. 2.

Plaintiff cannot demonstrate either that the DOCCS grievance program operates as a dead end or is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Despite his assertion that the grievance system "in 2012/2013 was [o]paque and impossible to follow," Pl.'s Mem. of Law at p. 13, Plaintiff appears to have had no difficulty in navigating the three step grievance process between March 2013 and September 2013 when he filed and appealed, both to the Superintendent and CORC, a grievance regarding his medical care at Marcy Correctional Facility. Pfendler Decl. at Ex. B.

> This shows that Plaintiff did not view the filing of grievances as a dead end. It also demonstrates that he clearly understood DOCCS' inmate grievance policy and could navigate it when he wished to pursue a grievance. As such, the first two exceptions identified under *Ross* are not applicable here.

*Walker v. Ball*, 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018); *see also Gonzalez v. Coburn*, 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) ("Plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that Plaintiff could not avail himself of it.").

Plaintiff also seeks to invoke the third basis for unavailability identified in *Ross* by asserting that "prison officials thwarted the Plaintiff through machination, misrepresentation, threats and intimidation, from . . . filing a grievance or seeking medical attention." Pl.'s Mem of Law at pp. 11-12.

Under *Ross*, threats or other intimidation by prison employees may render administrative remedies unavailable. *Ross v. Blake*, 136 S. Ct. at 1860, n.3. However, on this record such a contention is inconsistent with Plaintiff's assertions that he did properly grieve the assault, and with Plaintiff's filing of grievances after that time. *See*, *e.g.*, Pl.'s Mem. of Law at p. 12; Pfendler Decl. Ex. B; *Gough v. Morris*, 2018 WL 7199494, at *5 (N.D.N.Y. Dec. 14, 2018), *report and recommendation adopted*, 2019 WL 416150 (N.D.N.Y. Feb. 1, 2019); *Crawford v. Baltazar*, 2018 WL 2041711, at *6 (S.D.N.Y. Apr. 30, 2018).

Instead, Plaintiff's allegations amount to a "generalized fear of retaliation" without allegations of any specific threats or other actions that would prevent him from filing a grievance regarding the alleged assault. Such allegations are insufficient to excuse a failure to exhaust. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) ("[P]laintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his failure to file a grievance[.]"); *see also Rodriguez v. Cty. of Suffolk*, 2014 WL 3531897, at *5 (E.D.N.Y. June 30, 2014) ("Courts tend to find mere 'generalized fear' when no actual threat was made.") (internal citation omitted). This is particularly true given that Plaintiff was transferred out of Clinton to Downstate Correctional Facility soon after the alleged assault and makes no credible threat of harm at Downstate. There is no evidence in the record that suggests that Plaintiff reasonably feared retaliation by any personnel at Downstate or that administrative remedies were otherwise unavailable to him there. *See Contino v. City of New York*, 2013 WL 4015816, at *6 (S.D.N.Y. Aug. 7, 2013) ("An inmate's fear that disciplinary actions will be taken against him if he proceeds with

a grievance process must, at a minimum, be reasonable in order to relieve the plaintiff of his obligation to exhaust."); *Goodson v. Silver*, 2012 WL 449937, at *8 (N.D.N.Y. Sept. 25, 2012) ("[E]ven if the Court were to find that Plaintiff was effectively prevented by Defendants from filing a grievance while he was at Clinton C.F., the Court would find that he was not prevented by Defendants (or anyone) from filing that grievance . . . once he was transferred from Clinton C.F.").

Plaintiff also appears to contend that he satisfied the exhaustion requirement via informal means: his Complaint describes letters he wrote to officials and states that he was interviewed by the Inspector General. Plaintiff alleges that Lt. Olmstead stated, "that since the Inspector General's Office was involved, the issue was . . . a 'non-grievable matter.'"[3] Am. Compl. at pp. 14-15. However, the described interactions, indicating that prison officials were likely aware of the nature of Plaintiff's complaint, are insufficient to constitute "proper exhaustion." *See Davis v. Doe*, 2017 WL 8640829, at 3 (N.D.N.Y. Dec. 29, 2017); *see also Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought, does not constitute 'proper exhaustion.'") (internal citation omitted)). "Regardless of whether . . . informal complaints put the prison officials on notice of his grievance 'in a substantive sense,' . . . to satisfy the PLRA a prisoner must also procedurally exhaust his available administrative remedies." *Macias v. Zenk,* 495 F.3d at 43.

---

[3] To the extent Plaintiff had any doubt about whether the matter was grievable, and his purported attempts to file grievances certainly suggest this was not the case, he was obligated under New York's process to file the grievance. "If an inmate is unsure whether an issue is grievable, he or she should file a grievance and the question will be decided through the grievance process ..." 7 N.Y.C.R.R. § 701.3(e)(3).

Accordingly, the Court finds that Plaintiff has not established an issue of material fact as to the availability of administrative remedies. The Court therefore recommends that Defendants' Motion be **granted** based upon Plaintiff's failure to exhaust.

## V. EIGHTH AMENDMENT DELIBERATE MEDICAL INDIFFERENCE

### A. Legal Standard

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment

or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong of the Eighth Amendment analysis is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, *i.e.*, an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin* ("*Hathaway II*"), 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

## B. Analysis

Plaintiff claims that Dr. Vadlamudi was deliberately indifferent to his serious medical needs based on three occasions where Dr. Vadlamudi was dismissive of his requests for further testing and for stronger pain medication to alleviate the pain

associated with injuries to his ribs, right shoulder and back.  *See* Am. Compl.; Dkt. No. 90.  Defendants argue that Dr. Vadlamudi was not deliberately indifferent to Plaintiff's medical needs, that he treated Plaintiff according to his professional judgment and that Plaintiff's claim in this regard "boils down to a disagreement with that professional judgment."  Defs.' Mem. of Law at p. 8.  For the reasons that follow, I recommend that Defendants' Motion for Summary Judgment as to this claim be granted.

### 1. *Objective Standard: Sufficiently Serious Medical Condition*

As a preliminary matter, Defendants do not contest the seriousness of Plaintiff's injuries for which he sought medical treatment.  Medical records ranging from January of 2013 to June of 2013 indicate that Plaintiff repeatedly reported to sick call and presented to different medical personnel throughout that time period complaining of discomfort and chronic pain in his neck, back, shoulder, and pain radiating from his ribs.  *See generally* Dkt. No. 80.  Severe pain, especially if lasting an extended period of time, can amount to a "serious medical need" under the Eighth Amendment.  *See, e.g.*, *Hathaway v. Coughlin*, 37 F.3d at 67 (finding Plaintiff with degenerative hip condition who experienced great pain over an extended period of time and had difficulty walking had "serious medical needs").  Moreover, "chronic pain can be a serious medical condition." *Price v. Reilly*, 697 F. Supp. 2d 344, 363 (E.D.N.Y. 2010) (citing *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003)).  The Court finds that Plaintiff's repeated complaints of extreme pain and discomfort relating to back and right shoulder pain at sick call are sufficiently serious conditions to satisfy, at least for purposes of this Motion, the objective prong of the Eighth Amendment analysis.

## 2.  Subjective Standard: Conscious Disregard

Construing the evidence in the light most favorable to Plaintiff, the facts in the record fail to demonstrate that Dr. Vadlamudi acted with the requisite deliberate indifference to Plaintiff's serious medical needs.   Instead, the record indicates that Plaintiff's claim that Dr. Vadlamudi was deliberately indifferent to his serious medical needs amounts to a difference in opinion as to medical treatment.

Dr. Vadlamudi's Declaration indicates that he saw Plaintiff on four different occasions: January 18, 2013, January 22, 2013, March 21, 2013, and May 23, 2013. Vadlamudi Decl. at ¶¶ 5, 6, 8, & 9.   During Plaintiff's first visit with Dr. Vadlamudi, Dr. Vadlamudi ordered Tylenol 3 for Plaintiff and put in an order permitting him to use the bottom bunk in his cell.  *Id.* at ¶ 5.   Plaintiff then presented to Dr. Vadlamudi on January 22, 2013 complaining of "extensive physical pain" in his spine, neck, and shoulder pain and requested further testing to "determine the extent of the damage."   Am. Compl. at p. 17; Vadlamudi Decl. at ¶ 6.   Based on his observations during that visit, Dr. Valdamudi determined that Plaintiff had a cervical strain, but further testing was not indicated at that time and ordered Tylenol or Ibuprofen for Plaintiff to treat his pain.   Am. Compl. at p. 17; Vadlamudi Decl. at ¶ 6.   On March 21, 2013,[4] Dr. Vadlamudi again examined Plaintiff and it was documented in his progress note that Plaintiff presented with restricted motion in his right shoulder in addition to complaining of back pain.  *See* Vadlamudi Decl. at ¶ 8; *see also* Dkt. No. 80 at p. 12.   Dr. Vadlamudi contends that after examining Plaintiff

---

[4] This visit prompted Plaintiff to file a grievance against Dr. Vadlamudi.

that day an MRI was not medically indicated and the course of treatment for Plaintiff's complaints included continuing to prescribe Tylenol or Ibuprofen and ice packs. Vadlamudi Decl. at ¶ 8. Plaintiff alleges that Dr. Valdamudi "failed to investigate the cause of the pain through diagnostic testing." Am. Compl. at p. 10. Plaintiff's last noted visit with Dr. Vadlamudi occurred on May 23, 2013, when Dr. Vadlamudi examined Plaintiff and noted sufficient range of motion in his right shoulder so much so that he authorized exercise. Vadlamudi Decl. at ¶ 9. Additionally, Dr. Vadlamudi noted during this visit that Plaintiff's ambulation was fine and an MRI was not medically indicated at that time although Plaintiff continued to request diagnostic testing. *Id.*

Plaintiff states in his opposition papers that Dr. Vadlamudi did not "examine" him during visits, that his complaints were only listed, and that Dr. Vadlamudi was deliberately indifferent to his medical needs. *See generally* Dkt. No. 90. However, Plaintiff has failed to show a genuine dispute of material fact as to whether Dr. Vadlamudi had the requisite culpable state of mind to establish an Eighth Amendment violation. First, the record revealed that, contrary to Plaintiff's position, Dr. Vadlamudi did see and treat Plaintiff on four different occasions. At the very least, the visits referenced in Dr. Vadlamudi's declaration indicate that Plaintiff was in fact examined and/or prescribed pain medication on every single occasion. Vadlamudi Decl. at ¶¶ 5, 6, 8, & 9. Second, Plaintiff's grievance specifically requested stronger pain medication and diagnostic testing in the form of x-rays and MRIs. Dkt. No. 79-9 at p. 2. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d at 703. The law is clear that "the fact that a prisoner

- 18 -

might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* Moreover, Defendant's alleged failure to prescribe stronger medication or order additional diagnostic testing is no basis for relief as it is well established that "disagreements over medications, diagnostic techniques (*e.g.*, the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also Revels v. Corr. Med. Care, Inc.*, 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) ("A mere disagreement with a prescribed course of treatment is not sufficient to establish a violation of the Eighth or Fourteenth Amendment."); *Washington v. Westchester Cty. Dep't of Corr.*, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("it is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference."). The record shows that Plaintiff clearly preferred a different course of treatment than what Dr. Vadlamudi was recommending; however, Dr. Vadlamudi was exercising his professional judgment when deciding whether or not to order additional diagnostic testing or prescribe stronger pain medication. Therefore, Dr. Vadlamudi's treatment as to Plaintiff's back and shoulder pain does not rise to the level of deliberate indifference and the Court recommends granting the Motion.

## VI. Plaintiff's Additional Arguments as to Defendants'
## Motion for Summary Judgment

### A. Timeliness of the Motion for Summary Judgment

Plaintiff contends in his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment that Defendants failed to timely file their Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. Pl.'s Mem. of Law. Specifically, he contends that Defendants were required to file their Motion by October 13, 2018 and that Defendants filed their Motion on November 13, 2018, one month past the deadline. Pl.'s Mem. of Law. The Court issued a Text Order on June 13, 2018, resetting the pre-trial deadlines in this case, including the dispositive motion deadline. Dkt. No. 73. The new dispositive motion deadline was set for November 13, 2018. *Id.* The Court's docket sheet in this case confirms that Defendants filed their Motion for Summary Judgment on November 13, 2018 in accordance with the Text Order. Dkt. No. 79. Therefore, Plaintiff's argument that Defendants failed to timely file their dispositive motion pursuant to FED. R. CIV. P. 56 is unsupported.

### B. The Failure to Name Defendant Russell in the Notice of Motion

Additionally, Plaintiff argues that because Defendants did not include Defendant Russell when they addressed Plaintiff's failure to exhaust administrative remedies in a portion of their argument in their Memorandum of Law that his claim against this particular Defendant should stand. *See* Pl.'s Mem. of Law at p. 9. Defendants' Reply identifies this as a "scrivener's error" that does not prejudice Plaintiff in any way since the exhaustion argument equally applies to all relevant Defendants in relation to the

December 21, 2012 incident. *See* Dkt. No. 91, at p. 1, n.1. Defendants further address this issue by pointing out that the Notice of Motion itself seeks dismissal of the entire Amended Complaint and that the Memorandum of Law in Support of Summary Judgment specifically calls for the dismissal of the Amended Complaint with regard to Defendant Russell. *Id.* Defendants' Memorandum of Law specifically references Defendant Russell in regard to the exhaustion argument. Dkt. No. 79-1 at p. 7. Plaintiff's argument, therefore, is no basis for denying summary judgment to Russell.

## VII. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 79) be **GRANTED** and that Plaintiff's Amended Complaint be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[5] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*,

---

[5] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated:   August 26, 2019
              Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge