**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MARK LAPIERRE,**

         **Plaintiff,**

vs.                **9:15-CV-1499**
                    **(MAD/DJS)**
**CHAD LAVALLEY,** *et al.***,**

         **Defendants.**

---

**APPEARANCES:**         **OF COUNSEL:**

**MARK A. LAPIERRE**
15-A-1283
Washington Correctional Facility
Box 180
72 Lock 11 Lane
Comstock, New York 12821
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**    **CHRISTOPHER LIBERATI-CONANT,**
**STATE ATTORNEY GENERAL**    **AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

   Plaintiff, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983, asserting claims arising from his confinement at both Clinton Correctional Facility ("Clinton") and Marcy Correctional Facility ("Marcy"). *See* Dkt. No. 1. Following initial review of the complaint and after receiving leave from the Court, Plaintiff filed his amended complaint on November 30, 2017, which removed previously dismissed Defendants and added Officer Randy

Russell as a named Defendant. *See* Dkt. No. 68. Plaintiff's amended complaint contains five causes of action arising from an incident that allegedly occurred on December 21, 2012, and medical treatment for injuries associated with that same incident. *See id.* at 9-10.

On November 13, 2018, Defendants moved for summary judgment. *See* Dkt. No. 79. In their motion, Defendants contend that Plaintiff's four causes of action relating to the December 21, 2012 use of force incident must be dismissed because Plaintiff failed to exhaust administrative remedies. *See* Dkt. No. 79-1 at 6-10. As to his deliberate medical indifference claim against Defendant Vadlamudi, Defendants argue that the claim fails on the merits. *See id.* at 10-14.

In an August 26, 2019 Report-Recommendation and Order, Magistrate Judge Stewart recommended that the Court grant Defendants' motion in its entirety and dismiss this action. *See* Dkt. No. 96. Specifically, Magistrate Judge Stewart found that Plaintiff failed to file a grievance regarding the December 2012 incident and that Plaintiff failed to demonstrate that his failure to exhaust should be excused because administrative remedies were available to him. *See id.* at 8-14. As to the claim of deliberate medical indifference against Defendant Vadlamudi, Magistrate Judge Stewart found that the facts in the record fail to demonstrate that he acted with the requisite deliberate indifference to Plaintiff's serious medical needs. *See id.* at 17-21. Rather, the Report-Recommendation and Order found that Plaintiff's claim that Defendant Vadlamudi was deliberately indifferent is nothing more than a difference of opinion as to the appropriate medical treatment. *See id.*

Currently before the Court is Magistrate Judge Stewart's Report-Recommendation and Order and Plaintiff's objections thereto.

## II. BACKGROUND

For a complete recitation of the relevant factual background, the Court refers the parties to Magistrate Judge Stewart's August 26, 2019 Report-Recommendation and Order.

## III. DISCUSSION

### A. Standard of Review

When a party files specific objections to a magistrate judge's order and report-recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[g]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

A court may grant a motion for summary judgment only if "the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the nonmoving party. *See id.* at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the nonmovant either does not respond to the motion or

fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's statement of material facts; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003).

"Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). "Indeed, the Second Circuit has stated that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment." *Id.* (citing *Showers v. Eastmond*, No. 00 CIV. 3725, 2001 WL 527484, at *1 (S.D.N.Y. May 16, 2001)). Moreover, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

B.  **Exhaustion**

The Prison Litigation Reform Act (" PLRA") states that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534

4

U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the IGRC which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id*. at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to the CORC, which makes the final determination within the administrative review process. *See id.* at § 701.5(d).

If an inmate's grievance contains issues of employee harassment, then the grievance bypasses the first step of IGRC review and is forwarded directly to the Superintendent. *See id*. at § 701.8(b)(c). The Superintendent must render a written decision within twenty-five days of

receipt of the grievance. *See id*. at § 701.8(g). An inmate may appeal such a decision to the CORC within seven days of its receipt. *See id.* at § 701.8(h).

If all three levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by the CORC, must be completed before an action asserting that claim may be filed in court. *See*, *e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross*, 136 S. Ct. at 1855. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it

becomes, practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'" *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860).

In the present matter, the Court finds that Magistrate Judge Stewart correctly determined that Plaintiff failed to exhaust his administrative remedies that were available to him regarding the December 2012 incident that occurred at Clinton. Initially, as Magistrate Judge Stewart correctly noted, Plaintiff's conclusory allegation that he filed a handwritten grievance that "disappeared" is insufficient to raise a question of fact regarding exhaustion. In his objections, Plaintiff claims that on or about December 29, 2012, Plaintiff "submitted the hand-written complaint/grievance because the Infirmary officers did not have official grievance forms." Dkt. No. 97 at 9. "Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations." *Rodriquez v. Cross*, No. 9:15-cv-1079, 2017 WL 2791063, *7 (N.D.N.Y. May 9, 2017) (citations omitted). Plaintiff has not provided the Court with any evidence, other than his own conclusory allegation, to support his claim that he attempted to file a grievance.

Moreover, in a January 1, 2013 letter Plaintiff sent to then DOCCS Commissioner Brian Fischer, Plaintiff mentions the assault and asks that his security designation be changed so that he would not have to be housed at Clinton later in the month when he had another court date scheduled. *See* Dkt. No. 79-5 at 1-3. In that letter, no mention is made of Plaintiff's alleged

7

attempt to file a grievance. *See id.* Similarly, no mention is made of any alleged grievance in the other documents Plaintiff submitted to DOCCS officials around the time of the alleged assault. *See, e.g.*, Dkt. No. 57-2 at 35. Additionally, Plaintiff did cause an investigation by the Inspector General through filing non-grievance complaints. *See* Dkt. No. 79-5 at 5-9. In documents generated as part of that investigation and by Plaintiff, again no mention is made of any grievance. *See id.*; *see also* Dkt. No. 36-1 at 28. Moreover, while Plaintiff repeatedly checked on the status of the Inspector General's investigation into the incident, Plaintiff made no inquiries into the status of the grievance he now alleges that he attempted to file. *See* Dkt. No. 79-5 at 5-9.

Previously, courts in the Second Circuit had held that "'a letter to the Superintendent who then commences an Inspector General investigation can constitute "special circumstances" that satisfy the PLRA requirement that prison officials be afforded time and opportunity to address prison complaints internally.'" *Winfield v. Bishop*, No. 9:09-cv-1055, 2013 WL 4736378, *6 (N.D.N.Y. Sept. 3, 2013) (quotation omitted). As discussed above, however, the Supreme Court recently rejected the Second Circuit's "special circumstances" exception to the PLRA's exhaustion requirement. Therefore, Plaintiff's complaints to the Inspector General's Office and Commissioner Fischer, which do not constitute complete and proper exhaustion under New York's grievance scheme, cannot excuse his failure to exhaust. *See Kearney v. Gebo*, No. 9:15-cv-253, 2017 WL 61951, *6 (N.D.N.Y. Jan. 4, 2017).[1]

---

[1] In his objections, Plaintiff contends that his "written complaint/grievance" was forwarded to Lieutenant Horan, who interviewed him on January 9, 2013. *See* Dkt. No. 97 at 11. The "written complaint/grievance" that Plaintiff is referring to is his January 1, 2013 letter to Commissioner Fischer which, as discussed, does not constitute complete and proper exhaustion. *See* Dkt. No. 79-5 at 1-4.

8

Plaintiff also argues that he was "threatened with further beatings and stabbing, (murder) should he complain, file a grievance, or seek medical attention." Plaintiff further alleged in his amended complaint that he "was threatened with Assault and Murder if I sought medical attention or filed a Grievance or complaint between December 21, 2012 and December 28, 2012, while at Clinton Correctional Facility." Dkt. No. 68 at 3-4. Yet Plaintiff was transferred to Downstate Correctional Facility on December 28, 2012. The record is clear that once there, Plaintiff was not deterred from raising complaints about the alleged December 21, 2012 incident. Nor was Plaintiff deterred from filing a grievance regarding his medical treatment, in which he reiterated his claim that he had been the victim of assault by staff. *See* Dkt. No. 79-9. The only threats Plaintiff claims to have received were from officers at Clinton. Since Plaintiff was transferred back to Downstate on December 28, 2012, and had until January 21, 2013 to file his grievance, Plaintiff was not prevented from exhausting his administrative remedies by anyone at DOCCS. *See McNab v. Doe*, 686 Fed. Appx. 49, 51 (2d Cir. 2017); *Riles v. Buchanan*, 656 Fed. Appx. 577, 581 (2d Cir. 2016) (holding that where the plaintiff filed a grievance, despite being threatened by a corrections officer, "it cannot be said that the threat interfered with his exhaustion. He was not deterred from exhausting, he simply did not exhaust in accordance with the procedures"). Thus, Plaintiff expressed fear of reprisal or retaliation for filing a grievance is "inconsistent with Plaintiff's assertion that he did properly grieve the assault, and with Plaintiff's filing of grievances after that time." *Gough v. Morris*, No. 9:16-cv-1107, 2018 WL 7199494, *5 (N.D.N.Y. Dec. 14, 2018) (citation omitted).

Plaintiff also contends that DOCCS employees told him that the issue was not grievable and that it was "taken care of." Dkt. No. 90 at 12. However, Plaintiff allegation that he filed a grievance undermines his contention that he was misled regarding the grievability of the issue.

*See McNab*, 686 Fed. Appx. at 51.  Moreover, DOCCS Directive 4040 clearly instructs that "[i]f an inmate is unsure whether an issue is grievable, he or she should file a grievance and the question will be decided through the grievance process[.]"  Dkt. No. 79-8 at 2.

Accordingly, the Court finds that the undisputed facts establish that Plaintiff failed to exhaust administrative remedies that were available to him and, therefore, Magistrate Judge Stewart correctly determined that Defendants are entitled to summary judgment on Plaintiff's claims relating to the December 21, 2012 incident.

**C.     Deliberate Indifference**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This includes the provision of medical care and punishments involving "the unnecessary and wanton infliction of pain."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted).  A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  *See Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Hathaway*, 37 F.3d at 66.  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66.

The test for a § 1983 claim is twofold.  First, the prisoner must show that there was a sufficiently serious medical need.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  *See id.*  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (quotation omitted). Since there is no distinct litmus test, whether a medical condition is serious depends on certain factors, such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). The court should also judge the severity of the denial of care within the context of the surrounding facts and circumstances of the case. *See Smith*, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." *Chance*, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104, (1976). "Mere disagreement over proper treatment does not create a constitutional claim," as long as the treatment was adequate. *Id*. at 703; *Chance*, 143 F.3d at 703 (finding that mere disagreement with the prescribed treatment does not amount to deliberate indifference to a serious medical need). Furthermore, allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

Finally, while "[c]ruel and unusual punishment may consist of prison officials delaying an inmate['s] access to needed medical care," *Kaminsky v. Rosenblum*, 929 F.2d 922, 926 (2d Cir. 1991), the case law of this Circuit "has reserved such a classification for cases in which, for

11

example, officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (table) (affirming summary judgment for the defendants where the plaintiff received knee surgery approximately three years after sustaining the underlying injury) (internal citations omitted).

In the present matter, the Court finds that Magistrate Judge Stewart correctly determined that Defendant Vadlamudi did not act with the requisite deliberate indifference to Plaintiff's serious medical need. Rather, the record demonstrates that Plaintiff's claim amounts to nothing more than a difference in opinion as to the medical treatment Plaintiff required.

Initially, Plaintiff claims that Magistrate Judge Stewart improperly relied on Defendant Vadlamudi's declaration "to the exclusion of all other evidence." Dkt. No. 97 at 17. Plaintiff also alleges that the report incorrectly states that Defendant Vadlamudi examined Plaintiff on January 18, 2013 and that he ordered Tylenol 3 for Plaintiff and ordered that he be permitted to use the bottom bunk. *See id.* Plaintiff claims that he arrived at Marcy on January 18, 2013 with a prescription for Tylenol 3 from the doctor at Downstate and that he was only seen by a nurse that first day, who consulted with Defendant Vadlamudi by telephone. *See id.* Plaintiff claims that Defendant Vadlamudi directed that Plaintiff's Tylenol 3 prescription not be renewed, and that he only had seven days of medication remaining. *See id.* Plaintiff complains that Defendant Vadlamudi "had a long reputation of cancelling other doctor's prescriptions, as well as being rude, forgetful[ ], and unable to see or hear well." *Id.*

When Defendant Vadlamudi saw Plaintiff for the first time on January 22, 2013, Plaintiff takes issue with the limited examination that was actually performed, claiming that he only "listened to Plaintiff's heart and lungs with a stethiscope [sic] and tested Plaintiff's knee reflexes."

*Id.* at 18. Moreover, Plaintiff claims that he informed Defendant Vadlamudi that the doctor at Downstate informed him that he would need an MRI and that it could be ordered once Plaintiff arrived at his permanent facility, *i.e.*, Marcy. *See id.* Despite being so informed, Defendant Vadlamudi refused to order an MRI. *See id.*

Plaintiff also notes that on two occasions, he was transferred to Franklin Correctional Facility ("Franklin") for scheduled court appearances. *See id.* at 19. On both occasions, the doctor at Franklin prescribed Tylenol 3 for Plaintiff "due to his obvious severe pain." *Id.* Upon his return to Marcy, Plaintiff claims that Dr. Vadlamudi again cancelled his prescription for Tylenol 3. *See id.*

As Plaintiff's objections make clear, his deliberate medical indifference claim is based exclusively on his disagreement with Defendant Vadlamudi's prescribed treatment. *See Chance*, 143 F.3d at 703. In his declaration, upon which the Court may properly rely, Defendant Vadlamudi indicates that he did not believe that an MRI was medically indicated and that nothing more than regular Tylenol or Ibuprofen and ice were needed to treat Plaintiff's symptoms. *See* Dkt. No. 79-13 at ¶¶ 8-10. He further determined that Tylenol 3, which contains codeine, was inappropriate for Plaintiff's treatment, in part, because Plaintiff had a history of opiate-seeking behavior, which was documented in his medical records. *See id.* at ¶¶ 11-12.[2]

As Plaintiff's medical records make clear, Plaintiff was seen and treated by the medical staff at Marcy on a regular basis. He was never denied treatment, he was simply denied the treatment that he wanted. Accordingly, the Court finds that Magistrate Judge Stewart correctly

---

[2] Plaintiff indicates in his objections that it is DOCCS policy that medical records to not travel with an inmate who is sent to a temporary facility for short periods of time. *See* Dkt. No. 97 at 19. Since it was noted in Plaintiff's medical record at Marcy that he has a history of opiate seeking behavior, it is not surprising that he would be able to obtain a new prescription from a non-treating physician, unfamiliar with his past attempts at obtaining opiates.

determined that Defendants' motion for summary judgment should be granted as to Plaintiff's deliberate medical indifference claim.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Daniel J. Stewart's August 26, 2019 Report-Recommendation and Order (Dkt. No. 96) is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 79) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance in the Local Rules.

**IT IS SO ORDERED.**

Dated: September 26, 2019
   Albany, New York

Mae A. D'Agostino
U.S. District Judge